Nolan v. Nolan

CAROLYN ANN NOLAN, Individually; CAROLYN ANN NOLAN, Executrix of the Estate of Marie Claude Biet Nolan; and PATRICK BIET NOLAN v. ROBERT EARL NOLAN; ROBERT ERIC NOLAN; and MICHELLE ALICE NOLAN

No. 7921SC234

(Filed 19 February 1980)

Husband and Wife § 11.2; Conversion in Equity § 1; Vendor and Purchaser § 1.3 — separation agreement — husband's right to purchase property upon contingencies — dependency of children — jury question — exercise of option against children

Under the terms of a separation agreement a husband had the right to purchase a wife's interest in the parties' homeplace at a specified price if the wife elected to surrender the property or at the termination of the dependency of the parties' children; defendant husband admitted that the wife did not surrender her interest in the property before her death, but a jury question arose as to whether the children ceased to be dependent during the wife's lifetime. If the children ceased to be dependent during the wife's life and if the husband effectively exercised his option during the wife's life, then the children would be entitled only to the proceeds of the sale of the house pursuant to the terms of the separation agreement, but if the children did not cease to be dependent during the wife's life, then the husband could not exercise the option to purchase against the children.

APPEAL by plaintiffs from *Wood, Judge.* Judgment entered 4 December 1978 in Superior Court, FORSYTH County. Heard in the Court of Appeals 25 October 1979.

On 18 September 1947 Marie Claude Biet and Dr. Robert Earl Nolan were married. During their marriage the Nolans had four children: Carolyn Ann Nolan (born 17 May 1949); Patrick Biet Nolan (born 28 August 1951); Michelle Alice Nolan (born 18 May 1954); and, Robert Eric Nolan (born 11 January 1956). Dr. and Mrs. Nolan lived together until their separation on 13 May 1969. Dr. and Mrs. Nolan were divorced on 7 September 1971.

There is no dispute that the separation agreement between Dr. and Mrs. Noland was a valid and binding instrument. The agreement provided, *inter alia,* for the support of the children during their minority and while they maintained a scholastic average sufficient for graduation from an accredited college, university or professional school. Paragraph 6 of the separation agreement allocated the rights to occupancy and disposition of

the Nolan's house and lot located at 1150 Arbor Road in Winston-Salem, North Carolina. Paragraph 6 provides as follows:

"6. Wife shall have the sole and exclusive right to the use and occupancy of the house and lot now owned by the parties as tenants by the entirety at 1150 Arbor Road, Winston-Salem, North Carolina, during the period of dependency of each of the minor children, subject to the following conditions and provisions:

a. So long as Wife continued in the occupancy of the aforesaid property, Husband shall have the right, at his option, to make payments with respect to encumbrances against said property, as such payments fall due, and to deduct the same as a credit upon sums payable for child support and education as set forth in Paragraph 3.

b. When the last of the minor children above named ceases to be dependent, as hereinabove provided, then the aforesaid property shall be offered for sale at the best price obtainable and, after deducting the expenses of sale and all liens and encumbrances then owing upon said property, the proceeds shall be divided equally between Husband and Wife.

c. Notwithstanding any provisions to the contrary, if, during the period of dependency of any of the aforesaid minor children, Wife shall so elect, the aforesaid property shall be offered for sale at the best price obtainable and, after first deducting expenses of sale and payment of all liens and encumbrances, the proceeds shall be equally divided between Husband and Wife.

d. Notwithstanding any of the provisions above relating to the sale of the aforesaid property, if Wife should elect to surrender her right to the use and occupancy of the aforesaid property during the dependency of any of the children, or upon termination of the dependency of the last dependent child and the corresponding right of occupancy of Wife, Husband shall have the right to purchase Wife's interest by making payment to her of a sum equal to one-half of the difference between $65,000 and the total sum of liens and encumbrances then owing upon the aforesaid property."

On 4 May 1973 Mrs. Nolan filed a motion requesting that an order be entered requiring Dr. Nolan to pay increased alimony to Mrs. Nolan and to pay increased support for the three children still receiving support. The Court of Appeals held that the father's legal obligation for support of the four children ceased when the children became 18 and that there was no evidence showing that the needs of the children had increased. *Nolan v. Nolan,* 20 N.C. App. 550, 202 S.E. 2d 344, *cert. denied,* 285 N.C. 234, 204 S.E. 2d 24 (1974).

On 8 December 1975 Mrs. Nolan instituted a second action against Dr. Nolan in the District Court of Forsyth County. Her amended complaint, filed 5 January 1976, sought a declaratory judgment proclaiming that Mrs. Nolan had an exclusive right, under Paragraph 6(c) of the separation agreement, to sell the house and lot located at 1150 Arbor Road. The particular language in the amended complaint was as follows:

"VIII. Because of the high cost of maintaining the house and lot located at 1150 Arbor Road, *plaintiff wishes to sell* said property at the best price obtainable and divide the proceeds of such a sale between herself and the defendant, . . . The permissibility of this action is clearly established by subparagraph (c) of paragraph 6, 'notwithstanding any provisions to the contrary.'

IX. *Defendant has informed plaintiff that, in the event that such a sale takes place, defendant will seek to purchase plaintiff's interest in the property* by making payment to her of a sum equal to one-half (½) of the difference between $65,000.00 and the toal sum of liens and encumbrances then owing upon the property . . . ." (Emphasis supplied.)

Mrs. Nolan also alleged in her second claim for relief that Patrick, Robert and Michelle were still dependent because Robert was incapable of self-support and because Patrick and Michelle were continuing their education.

During the discovery which ensued after the amended complaint was filed, an interrogatory was sent to the plaintiff, Mrs. Nolan, which asked:

"14. Will you agree to convey your interest in the residence located at 1150 Arbor Road in Winston-Salem,

North Carolina, to the defendant in consideration of the sum equal to one-half of the difference between $65,000.00 and the total sum of liens and encumbrances now owing on the property?"

In an answer dated 12 February 1976, Mrs. Nolan replied: "No."

Exhibit 2 in the record indicates that on 16 December 1976 Patrick Nolan was suspended from Tennessee Wesleyan College, after a period of academic probation, for failure to meet minimum academic standards. Mrs. Nolan contended that Patrick Nolan was later admitted to North Carolina Wesleyan College and was eligible to graduate in the summer of 1976.

Also, Exhibit 3 in the record indicates that on 31 December 1975 Michelle was suspended from the University of North Carolina at Charlotte for maintaining an inadequate quality point average.

Mrs. Nolan died on 16 August 1976. The second action was pending at her death and was not dismissed until 3 August 1978, long after the present case was instituted on 28 April 1977.

On 16 November 1976 Dr. Nolan sent a letter to his children indicating his "intention to exercise the right to purchase the property according to the terms of the Deed of Separation," and stating that he would tender them a check for the full sum due on 14 January 1977. The letter also referred to a discussion concerning the disposition of the house held between Dr. Nolan and his children "several weeks" prior to the date of the letter.

In this action the executrix of Mrs. Nolan's estate and two of the children of the marriage between Dr. and Mrs. Nolan pray for a declaratory judgment that the heirs of Mrs. Nolan's estate have no obligation to sell their interests to Dr. Nolan. Dr. Nolan answers and presents a counterclaim praying that the court order the children to convey the Arbor Road property to Dr. Nolan.

In Paragraph VIII of Dr. Nolan's answer in this action, he stated:

"During her life, Marie Claude Biet Nolan did not elect to surrender her right to the use and occupancy of the property in question and the question of continued dependency raised

[in the earlier declaratory judgment action by Mrs. Nolan] was not resolved prior to her death.

By reason of the foregoing, the defendant could not effectuate his rights under paragraph 6d [of the separation agreement]."

The answer further stated that upon the death of Mrs. Nolan, the defendant requested that the children convey property to him in accordance with paragraph 6(d). The offer was refused by the plaintiffs in this action. Further, Dr. Nolan asserted that the plaintiffs by stipulation expressly waived the actual tender by the defendant and, irrespective of such stipulation, expressly tendered to all of the children their total and proportionate share which they would receive if the property were purchased under paragraph 6(d).

The plaintiffs in this action sent two sets of interrogatories to the defendant. In the first set of interrogatories, Dr. Nolan was asked, in relevant part:

"2. State whether, prior to the death of Marie Claude Ann Biet Nolan, you ever tendered to her the sum of one-half the difference between $65,000.00 and the liens and encumbrances then owing upon the property located at 1150 Arbor Road and advised her that she was required to sell her interests in the property to you under paragraph 6(d) of the Deed of Separation . . . ."

To this Dr. Nolan responded, in relevant part:

"A. Yes. Over a long period of time, various discussions were had regarding the sale of the property at 1150 Arbor Road. At the time of the death of plaintiffs' testate, there was an action pending in the District Court Division of Forsyth County, North Carolina, . . . wherein plaintiffs' testate sought a declaratory judgment to the effect that she owned a one-half interest in the property . . . and rejecting the contention . . . that this defendant was entitled to purchase all interest of plaintiffs' testate in the property . . . . During the course of that litigation and preceding and up to the time of the death of plaintiffs' testate, numerous conversations occurred between counsel for the plaintiff, now plaintiffs' testate, and this defendant, with no resolution having

been reached. It was a common understanding between the parties, up to the time of the death of plaintiffs' testate, that plaintiffs' testate would not convey the Arbor Road property to this defendant in accordance with the terms of paragraph 6d of the Deed of Separation, and a lawsuit designed to resolve the conflict was pending at the date of death of plaintiffs' testate."

In the second set of interrogatories sent to Dr. Nolan in this action, Dr. Nolan was asked to state whether, prior to Mrs. Nolan's death, if she decided to attempt the sale of the property, he ever advised Mrs. Nolan that she was required to sell her interest in the property under the terms of paragraph 6(d) of the Deed of Separation and whether he tendered to her the sums specified in that provision. To this question, Dr. Nolan responded.

"A. At the present time, I do not recall specifically telling Mrs. Nolan that if she decided to attempt the sale of the property, she was required to sell her interest to me under paragraph 6(d) of the Deed of Separation. During all such times, Mrs. Nolan was represented by legal counsel, and it was not appropriate for me to make such a proposal directly to her. However, my attorney in the litigation took the position in the pleadings filed in the case that such was the proper interpretation in the agreement. However, it was very obvious to us that any tender of anything would have been futile until a decision in that litigation, which Mrs. Nolan brought for the purpose of declaring the rights of the parties with respect to such provisions in the separation agreement and which was still pending trial at her death. Mrs. Nolan's terminal illness made it inappropriate for me to press legal matters, and out of respect for her, I did not do so."

Dr. Nolan was also asked whether he ever advised Mrs. Nolan that her right to use and occupy the property located at 1150 Arbor Road had terminated in accordance with the separation agreement. Dr. Nolan replied:

"A. Yes; this was a foregone conclusion for a long time, ever since Eric began working. There were a number of conversations on the subject matter, but it was in light of the fact that litigation was pending to declare the rights of the parties under the Deed of Separation. Mrs. Nolan obviously

did not agree with my position in view of the posture of the litigation which was being maintained at the time. After her terminal illness developed, it was, of course, inappropriate for me to press the issue. At the present time, I do not recall the dates of such conversations or the names of any persons who were present at the time."

In March 1978 both sets of parties in this action moved for summary judgment. On 4 December 1978 the trial court denied plaintiffs' motion, granted defendants' motion, and further ordered the children to convey any interest they might have had in the Arbor Road property for the sum specified in the separation agreement.

*Womble, Carlyle, Sandridge & Rice by W. P. Sandridge, Elizabeth L. Quick, and Keith W. Vaughan for the plaintiff appellants.*

*Hudson, Petree, Stockton, Stockton & Robinson by William F. Maready and Robert J. Lawing for defendant appellees.*

CLARK, Judge.

Five fundamental questions lie at the heart of this convoluted case:

1. Does subparagraph 6(d) of the separation agreement between Dr. and Mrs. Nolan control over the subparagraph 6(c) of the same instrument?

2. Did Mrs. Nolan actively "elect" to surrender her rights to the property?

3. Did the children cease to become "dependent" during Mrs. Nolan's lifetime?

4. Did Dr. Nolan effectively exercise his option to purchase the property upon cessation of the children's dependency during Mrs. Nolan's lifetime?

5. Was Dr. Nolan's option binding on Mrs. Nolan's heirs?

We will deal with each of these questions in the same order.

1. *Subparagraph 6(c) vs. subparagraph 6(d).* Both subparagraphs (b) and (c), as set forth above, provide, respectively,

for the sale of the property upon the conditions of the cessation of the dependency of the children, or when Mrs. Nolan elected to sell the property. Subparagraph (c) does begin with "[n]ot-withstanding any provisions to the contrary," and, without more, would lead one to conclude that subparagraph (c) would control over any conflicting provision. Subparagraph (d), however, begins with, "[n]otwithstanding any of the provisions above relating to the sale of the aforesaid property." We find no ambiguity in the introductory language of subparagraph (d) and we hold that the more particular language of subparagraph (d) specifically limits the rights given to Mrs. Nolan under subparagraphs (b) and (c) by providing that upon the occurrence of either of two contingencies, election of Mrs. Nolan to surrender possession or termination of the children's dependency, Dr. Nolan had the right to purchase Mrs. Nolan's "interest" in the property at a specified price. We must now look to see if either of the two contingencies under subparagraph 6(d) occurred.

2. *Mrs. Nolan's election to surrender.* Some question might be raised as to whether Mrs. Nolan effectively elected to surrender her rights in the property by filing the declaratory judgment action on 8 December 1975. We do not, however, have to answer that question for in his answer in the present action, Dr. Nolan admitted that Mrs. Nolan "did not elect to surrender her right to the use and occupation of the property."

3. *Dependency of the children.* There is no doubt that the issue as to whether the children were dependent was contested until Mrs. Nolan's death. This is a material issue in this case, for if the children ceased to be dependent, then it would have been proper for Dr. Nolan to have exercised his option prior to Mrs. Nolan's death. Consequently, the award of summary judgment by the trial court was improper. *Koontz v. City of Winston-Salem,* 280 N.C. 513, 186 S.E. 2d 897 (1972).

4. *Dr. Nolan's exercise of his option.* If the jury should find that the children ceased to be dependent during Mrs. Nolan's lifetime, then, as a matter of law, the trial court must hold that Dr. Nolan effectively exercised his right to purchase. Since Mrs. Nolan, in an answer to an interrogatory directed to her in the second action, openly refused to sell the Arbor Road property to Dr. Nolan, it was not necessary for Dr. Nolan to actually tender the

purchase price to her in order for him to have exercised the option. Dr. Nolan did all that he could have done. It was Mrs. Nolan, not Dr. Nolan, who brought the earlier declaratory judgment action and who litigated up to the time of her death the question of dependency. Dr. Nolan was unable to take further action during the litigation. The law will not require one to do that which is futile or is in derogation of the judicial process. *Millikan v. Simmons*, 244 N.C. 195, 199, 93 S.E. 2d 59 (1956).

5. *The effect of Dr. Nolan's option on the heirs.* Under the doctrine of equitable conversion, under which equity will treat as done that which ought to be done, if the children ceased to be dependent in Mrs. Nolan's lifetime and if Dr. Nolan effectively exercised his option during her lifetime, then the children would be entitled only to the proceeds of the sale pursuant to the terms of subparagraph 6(d). 3 Strong's N. C. Index 3d *Conversion in Equity* § 1 (1976). *See generally,* Annot., 172 A.L.R. 438 (1948); 27 Am. Jur. 2d *Equitable Conversion* §§ 12, 16 (1966).

If, however, the jury should find that the children did not cease to be dependent during Mrs. Nolan's lifetime, then the trial court, as a matter of law, must rule that Dr. Nolan could not exercise the option against the children. Ordinarily, an option to purchase land is a covenant running with the land which is binding upon the heirs of the optionor. *See, Trust Company v. Frazelle,* 226 N.C. 724, 40 S.E. 2d 367 (1946). It is otherwise, however, where from the terms of the option itself, or by necessary implication therefrom, the option is personal and is limited to the parties thereto. 77 Am. Jur. 2d *Vendor and Purchaser* § 37 (1975). By the terms of the agreement in question, and the implication arising therefrom, this option is only enforceable against Mrs. Nolan, not against the children after her death.

Since Dr. Nolan had no right to exercise his option against the interest held by Mrs. Nolan's heirs, we do not need to reach the question as to whether Dr. Nolan effectively exercised his option against the children within a reasonable time.

The judgment of the trial court is

Reversed and remanded.

Judges HEDRICK and MARTIN (Harry C.) concur.